

_____
**ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(at Baltimore)

| | | |
|---|---|---|
| In re: | * | |
| Hezekiah Coleman, Jr. | * | Case No. 10-21265-RAG |
| | | Chapter 13 |
| Debtor | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION IN SUPPORT OF ORDER
DENYING WITHOUT PREJUDICE APPLICATION
FOR COMPENSATION FOR COUNSEL FOR THE DEBTOR**

**I.    Preliminary Statement**

Debtor's counsel, Marc R. Kivitz (Counsel), filed an Application for Compensation for Counsel for the Debtor on April 3, 2013 (Dkt. No. 75)[1]. On March 11, 2013, the Trustee, Ellen S. Cosby, filed her Opposition to Application for Compensation (Opposition) (Dkt. No. 78). On April 3, 2013, the Court held a hearing (Hearing) on the Application and Opposition. The Application seeks (1) approval of additional fees for Counsel in the amount of $2,875 and (2) that the fees sought be approved as an administrative expense.[2] Swords are drawn over the question of whether under Appendix F, Subparagraph 4(B) of the Local Bankruptcy Rules of the

---

[1] A Revised Application for Compensation for Counsel of the Debtor was filed on April 3, 2013 (Application) (Dkt. No. 85) and that Application is the one referenced in this Opinion.

[2] Notwithstanding the greater amount identified in the Application, Counsel acknowledged at the Hearing that the Application included a mathematical error and that $2,875 is the correct sum sought.

United States Bankruptcy Court for the District of Maryland (App. F 4(B)), the work was done for matters "not reasonably expected and that [were] extraordinary" and hence allowable notwithstanding Counsel's express waiver of any payment exceeding $4,500 for work done in the main case as mandated by App. F 4(B). The Court concludes that because no evidence was offered with respect to the salient question, no additional fees can be allowed at this time. However, as this is a case of first impression the Court will reopen the hearing and receive relevant evidence, if Counsel so desires.

**II.    Background**

Mr. Hezekiah Coleman Jr. (Debtor) commenced this case on May 19, 2010 by the filing of his Voluntary Petition (Petition). The same day, Counsel filed his Statement pursuant to Rule 2016(b) (2016(b) Disclosure). The 2016(b) Disclosure provides in relevant part that, "[f]or legal services to be rendered, the debtor has agreed to pay the undersigned counsel pursuant to the terms of [App. F 4(B)], a flat fee in the amount of $4,500 for representation of the debtor for all matters in the main case." Although unstated in the 2016(b) Disclosure, because the fee arrangement was governed by App. F 4(B), Counsel is permitted to apply for "approval of additional fees for work done upon matters that were not reasonably expected and that are extraordinary."[3]

Counsel's uncontested testimony and time records were the only evidence offered at the Hearing. In summary, it was Mr. Kivitz's position that at its beginning, this case appeared to be a relatively simple one – focused upon the preservation of Mr. Coleman's home – that changed direction due to unforeseen and extraordinary circumstances that occurred after confirmation. Those circumstances were the successive layoffs of Mr. Coleman from his sixteen year long

---

[3] On January 15, 2013, Counsel filed a Supplemental Statement pursuant to Rule 2016(b) (2016(b) Supplemental) (Dkt. No. 71). The 2016(b) Supplemental disclosed the payment by the Debtor of additional compensation in the amount of $750.00.

2

career as a steelworker, topped off by his employer – R.G. Steel – finally going out of business. Hence, Mr. Kivitz's testimony mainly narrated his efforts to aid the Debtor in keeping his Chapter 13 ship – embodied by his confirmed plan – afloat while weathering his stormy, post-confirmation employment travails.

As Mr. Kivitz testified, when the case was filed the Debtor owned four real properties: his home at 6610 Rosetta Road (Rosetta Road) and three other investment (rental) properties. Each was encumbered by at least one lien and related indebtedness. At that time, the Debtor was current on his investment property obligations but the Rosetta Road obligation was in default with an arrearage of approximately $26,000 due.[4] As described by Counsel, Debtor's initial Plan called for monthly payments of $350 to the Trustee, with payments being dispersed mainly to liquidate the Rosetta Road arrearage. However, when the extent of the Debtor's prepetition tax refunds came to light, the projected monthly plan payments increased to $1,816 in the Debtor's Amended Chapter 13 Plan (Plan) filed on August 3, 2010 (Dkt. No. 23). The Plan was confirmed by Order entered on August 12, 2010 (Dkt. No. 26).

Not long after confirmation, the Debtor's job troubles began. Mr. Kivitz did not testify as to either the underlying detail or timing of these troubles but he did include a synopsis in the Application that was not disputed by the Trustee:

> Debtor for sixteen (16) years was a steel worker whose income from R.G. Steel (later, Severstal Sparrows Point, LLC) supported his residential and investment real properties. Four months after Plan confirmation, in December, 2010, he was unexpectedly laid off work until May, 2011 and lead (sic) to six (6) matters of litigation. This first layoff caused Mr. Coleman to fall behind in lien payments on the Maple Hill Avenue and Rosetta Road properties and in confirmed Plan payments leading to motions for relief from stay and a motion to dismiss the case. After catching up these payments, Mr. Coleman was laid off a second time, in October, 2011 to February, 2012, and then suffered a third and final layoff in June 2012, and the plant closed in December, 2012. These unanticipated and

---

[4] Mr. Kivitz testified that the Debtor's family medical issues caused the arrearage.

3

extraordinary events had repercussions to his Plan and caused litigation to be filed again by both the Chapter 13 trustee and by secured creditors seeking lien foreclosure. None of these matters was contemplated at confirmation.

Application 2.

These events disrupted the Debtor's ability to make plan payments and set off post-confirmation motions' practice as follows:

a. On May 2, 2011, the Trustee filed a Motion to Dismiss Case for Material Default in Plan Payments (First Motion to Dismiss) (Dkt. No. 42). Mr. Kivitz discussed this with the Debtor and thereafter prepared and filed a response (Dkt. No. 45). Because the Debtor cured the arrearage, the First Motion to Dismiss was withdrawn on December 5, 2011 (Dkt. No. 60).

b. On November 19, 2012, the Trustee filed a second Motion to Dismiss for Material Default in Plan Payments (Second Motion to Dismiss) (Dkt. No. 65). Mr. Kivitz again discussed this with the Debtor and thereafter prepared and filed a response (Dkt. No. 66). Because the Debtor cured the arrearage, the Second Motion to Dismiss was withdrawn on February 6, 2013.

c. On August 25, 2010, Wells Fargo Bank, N.A. (WF) filed a Motion Seeking Relief from Stay as to [Rosetta Road] (First WF Motion) (Dkt. No. 33). Mr. Kivitz consulted with the Debtor regarding the claimed arrearage and, after payment by the Debtor, the First WF Motion was withdrawn on October 13, 2010 (Dkt. No. 38). WF filed a second motion for relief from the automatic stay as to Rosetta Road on May 4, 2011, entered at Docket Number 43. In that instance, Mr. Kivitz filed a response and, after the Debtor's cure, the second motion was withdrawn on July 22, 2011 (Dkt. No. 58).

d. On July 12, 2011, PHH Mortgage Corp. (PHH) filed a Motion for Order Granting Relief from Automatic Stay (First PHH Motion) (Dkt. No. 54) as to one of the Debtor's investment properties. Again, Mr. Kivitz consulted with the Debtor and the Debtor cured the default. The PHH First Motion was withdrawn on August 22, 2011 (Dkt. No. 59). Like WF, PHH filed a second motion for relief from stay as to the same property on February 6, 2013 at Docket Number 72. Following the same routine of discussion and payment, PHH's second motion was withdrawn on February 28, 2013 (Dkt. 74).

The bulk of the additional fees sought by Mr. Kivitz are mainly tied to the resolution of the foregoing events.

### III. Analysis

Appendix F was enacted to simplify and standardize compensation for services rendered in Chapter 13 cases. Among other things, the form driven and predictable nature of most Chapter 13 cases allows for the standardization of fees. *See*, *In re Grubb*, 2010 WL 396181, at *2 (Bkrtcy.E.D.Va. 2010) and *In re Bellamy*, 379 B.R. 86, 94 (Bkrtcy.D.Md. 2007).[5] The decision to select one of the three menu items provided by Appendix F, or to choose not to select Appendix F at all, is a voluntary one. Except for possibly the case of a savvy repeat filer debtor, it is likely that the pre-filing decision as to which paragraph (A ($3,500), B ($4,500) or C ($2,000)) to use, is driven by the attorney's judgment (as opposed to the debtor's), informed by an educated estimate of what a particular debtor's future might hold.  Hence, once an arrangement is selected, Appendix F's governing provisions should be taken to mean what they say. Therefore, Mr. Kivitz had an obligation to prove that the fees in question were "not reasonably expected and extraordinary in nature" in order to do an end run around the $4,500 cap.

Mr. Kivitz asserts that his activities on behalf of the Debtor fit within the exception to the rule. The Trustee, on the other hand, maintains that the Debtor's successive layoffs and the resulting motions' practice reflect the plain vanilla of Chapter 13 post-confirmation practice. The Court concludes that in order to properly apply App. F 4(B), the evidence must address the

---

[5] *Bellamy,* penned by then Chief Judge Keir, provides the definitive summary of the historical record that preceded and informed the creation of Appendix F. Suffice to say here that the Bench, Bar and Chapter 13 panel Trustees agreed that an organized, rule based approach to fees for debtor's counsel would benefit local Chapter 13 practice. The Bench was also concerned with post-confirmation representation of debtors, especially when the going gets tough as it often does. Appendix F represents the consensus solution.

parties' reasonable, underlying expectations at the time of confirmation with respect to the post-confirmation events and then contrast those expectations with the events.[6] The fact that a post-confirmation interruption in the Debtor's income causes a dispute should not *per se* disqualify it from being deemed "not reasonably expected and extraordinary in nature" from the perspective of what was understood at confirmation. By the same token, 'extraordinary' is a strong word whose meaning sets a high bar irrespective of the definition applied. Accordingly, to answer the question presented, the reasons underlying the interruption in income and the request for additional attorney's fees, must be examined.

Because no evidence was offered on those salient points, the Court cannot render a decision at this time.[7] However, because this is a case of first impression, the Court will reopen the hearing if Mr. Kivitz requests that option. *While extremely unlikely*, it is possible for a series of layoffs to constitute extraordinary events completely unanticipated at confirmation. Does the termination of a major local business enterprise – like that of R.G. Steel – fit the same category? In each circumstance, the correct answer must be found in the particular facts and circumstances of the case. However, because no evidence was offered on either point, the Court is left without a factual basis to make a ruling.

---

[6] Needless to say, the labels affixed to the papers filed as a result of the events are less relevant.

[7] Counsel's testimony focused upon the services rendered and the efficiency with which he rendered them. He mentioned nothing about his client's (or anyone else's) reasonable expectations regarding the salient points at the time of confirmation or how extraordinary the subsequent events were by comparison.

**IV.     Conclusion**

In conclusion, the Court cannot rule on the Application at this juncture. The Court will permit Mr. Kivitz to offer additional evidence on the terms set forth in the Order accompanying this Opinion.

cc:     Hezekiah Coleman, Jr., *Debtor*
        6610 Rosetta Road
        Baltimore, MD 21209

        Marc R. Kivitz, *Counsel for Debtor*
        201 N. Charles Street
        Suite 1330
        Baltimore, MD 21201

        Ellen W. Cosby, *Trustee*
        300 E. Joppa Road,
        Suite 409
        Towson, MD 21286

        Mark A. Neal, *Assistant U.S. Trustee*
        101 W. Lombard Street
        Suite 2625
        Baltimore, MD 21201

**End of Order**